GEORGE T. JOHNSON, APPELLANT, *v.* WALTER S. WATKINS, AND WELLESLEY WATKINS, HIS SON, DBA AS COPARTNERS UNDER THE FIRM NAME AND STYLE OF W. S. WATKINS & SON, AND GEORGE E. MILLER AND FRANK GERHARD, RESPONDENTS.

No. 3736

October 20, 1953.                    262 P.2d 237.

*H. Dale Murphy,* Reno, and *McCarran, Rice, Wedge and Blakey,* Reno, Attorneys for Appellant.

*Morgan Anglim,* Reno, Attorney for Respondents George E. Miller and Frank Gerhard.

*Griswold, Vargas and Bartlett,* Reno, Attorneys for Respondents Walter S. Watkins and Wellesley Watkins, his son, dba as copartners under the firm name and style of W. S. Watkins & Son.

## OPINION

By the Court, EATHER, C. J.:

A nonsuit was entered against plaintiff and he asks us to reverse the judgment. After a careful study of the entire record we are compelled to affirm the action of the district judge.

Defendant, W. S. Watkins & Son, operated a lumber mill in Reno to which heavy logs were hauled and dumped into a pond. Plaintiff (appellant) was an independent hauler of logs under contract with a man who sold logs to Watkins. Plaintiff had delivered to

the Watkins Mill forty or fifty loads of logs prior to the accident which resulted in injury to plaintiff. The operation on each occasion was the same.

A road on the mill premises adjoined the pond and the loaded trucks used the road, stopping opposite an "A" frame erected on the ground so that each load of logs was between the frame and the pond. The frame consisted of two heavy upright posts which formed a triangle with the ground as a base. The frame was not perpendicular but the apex extended out and over the road so that a pulley block with hook on the end of a wire rope suspended from and running on a wheel at the apex could be lowered onto the loaded truck. The block with the pulley, when not in use for unloading purposes, was swung by hand away from the road and attached to one leg of the frame. There was no fastening device to hold the block on the leg but the block and rope had always been placed around a leg of the "A" frame and apparently held in position by its own weight of approximately fifty pounds until it was removed manually. The wire rope went through the pulley at the apex of the frame and came down to the equipment on the ground which furnished the motive power for its operation.

It was the custom for each log hauler to take the block from the leg of the frame, after he had placed his truck in position, and attach the hook to chains or wire rope placed in contact with his load of logs in such manner that, when the power was applied to the wire rope through the pulley of the frame, the logs would be rolled off the far side of the truck into the pond. After the unloading had been accomplished, the hauler would place the block on the leg of the frame and move his truck forward so that the trailer would be under the apex of the frame. Then he would take the block again from the leg of the frame and attach the hook to a portion of his trailer and the trailer would be raised and held suspended in air until he backed his truck into a position

under the suspended trailer; then the trailer would be lowered onto the truck and the hauler would remove the block and place it again on the leg of the frame. He would then fasten the tongue of the trailer onto the truck by means of chains on each piece of equipment and would drive away. Thus it can be seen that during each unloading operation, the truck or hauler would handle the block twice from the frame and return. The block was raised or lowered only when the operator of the motive power equipment received a signal from the hauler. At the time of the accident the winch which normally provided motive power was out of order and the power was supplied by a tractor. When the block was to be raised, the tractor to which the wire rope was attached was driven away from the base of the frame at a right angle. Each unloading operation accordingly required eight or more signaled instructions from the trucker to the tractor driver—to start, to stop, to back, to stop, etc., and finally that the operation was complete.

At the time of the accident the caterpillar tractor was owned by George E. Miller and was on the Watkins' premises by virtue of an oral contract with Miller; and the contract required Miller to supply the tractor, keep it in working order, and to provide an operator therefor, for all of which W. S. Watkins & Son paid Miller on an hourly basis. Melvin Frank Gerhard was operating the tractor on July 23, 1948.

On July 23, 1948, plaintiff arrived about noontime at the Watkins Mill with a load of logs on his truck and trailer. He placed the truck under the apex of the frame and moved the block from the leg of the frame to his load. After his logs had been put into the pond, he replaced the block on the frame and moved his truck into position for loading the trailer onto the truck. He again secured the block from the frame and placed it on his trailer. After the trailer had been loaded he removed the block and placed it on the leg of the frame and he turned his back to the frame and attempted to

fasten the tongue of the trailer to the truck. Within a minute after he placed the block at the frame he was struck on the left side of his face by the block or wire rope, which had swung from the frame where plaintiff had placed it. Plaintiff could not see behind him while he was fastening the tongue of his trailer with his back to the frame and he testified that he did not know exactly what struck him. Defendant, Gerhard, called by plaintiff as for cross examination, testified that he got plaintiff's signal that he was not needed longer and he stopped his engine and locked the brakes of the caterpillar tractor. He says his tractor did not move thereafter; there is no contradictory testimony. As he was descending from his tractor to the ground he saw the block and tackle swinging toward and strike plaintiff. He was not sure, however, "whether it was the block or cable or hook" that struck plaintiff. He testified that before receiving the signal from plaintiff he saw plaintiff swing the block around the leg of the frame. He said that when he saw the block swinging toward and some part of the equipment strike plaintiff's head, plaintiff was in a kneeling position on the truck. Plaintiff testified that he was standing on his truck when he was struck.

Apparently the nonsuit was granted on the theory that there was a complete failure of proof of negligence on the part of any defendant. Plaintiff was thoroughly familiar with the equipment and had used it many times. He testified he placed the block and its wire rope around the leg of the frame about 5 or 5½ feet above the ground. Plaintiff is 5 feet 11 inches tall. He contends that because he was standing on his truck the block was higher from the ground when it struck him than when he placed it on the frame. He insists that we must infer that it could not have reached that higher position unless the caterpillar tractor had moved and pulled the block higher. Therefore, plaintiff says, we must infer that the tractor moved and that negligence was involved in

the movement; that from the physical facts and the laws of physics (that the pendulum, released at 5½ feet, could never reach a greater height than that) the pulley striking his head at a height of some nine feet, must have been raised by the forward movement of the tractor.

The statute (sec. 9047.04, N.C.L.1931–1941 Supp.) provides:

"WHEN AN INFERENCE ARISES. Sec. 558d. When an inference arises, an inference must be founded:

"1. On a fact proved; and

"2. On such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business, or the course of nature."

Plaintiff has failed to show sufficient facts to support an inference. There is an absence of proof of the exact distance of plaintiff's head from the ground at the time of the impact. Under plaintiff's own theory of the case, that distance is important. He says he was standing on his truck. The operation in which he was then engaged was fastening the trailer tongue to the bed of the truck by means of chains. The top of the tongue was from 3 to 3½ feet above the bed of the truck. There was testimony that the bed of the truck was 3 feet 8¾ inches from the ground.

He put a chain over the tongue and was attempting to bind that chain and another chain to keep the tongue in place. If he were fully erect, his head probably would be as much as three feet higher than if he were stooping. His statement that he was standing is not fully explanatory. He could have been on his feet, bending his body so that his head was very low and still he would have been standing. He testified that he had to apply his weight to the task of binding the tongue to the truck. Even were he standing he could hardly have done it unless he was stooped or crouched, in which event his head might not have been higher than the block when it

was on the leg of the frame before it started to swing towards him. If that were true, a movement of the tractor is not a necessary or unavoidable inference.

Plaintiff's own testimony is that he wanted to have his logs unloaded quickly so he could go back to the woods for another load that day. When he arrived at the Watkins Mill, Gerhard was about to quit work for lunch but plaintiff prevailed upon Gerhard to delay lunch until the load had been put into the pond. It is entirely possible that plaintiff's haste caused him to place the block insecurely around or against the frame and it slipped from position solely because of plaintiff's lack of care. Thus, plaintiff is mistaken in his insistence that the only inference possible in the case is that the tractor moved the block.

Of even greater importance is the fact that the evidence does not show what portion of the apparatus of block and tackle struck plaintiff's head. Plaintiff proceeds upon the assumption, wholly without proof, that it was the pulley which caused the injury. There is nothing in the record to indicate that it might not have been that portion of the cable immediately above the pulley. This being so, the proved facts are as consistent with the testimony of Gerhard as otherwise. Gerhard's testimony, therefore, stands uncontradicted and must have been so considered by the trial judge upon motion for nonsuit. Even if Gerhard's testimony should be disregarded, although uncontradicted, on the motion for nonsuit, we are still left with no proof of any negligence on the part of any defendant.

Plaintiff invokes the res ipsa loquitur doctrine, but it cannot be applied in this case. It is undisputed that the last hands touching the block were those of plaintiff. He put the block on the leg of the frame and gave a signal to Gerhard that there was no further need for the tractor. As Gerhard testified that the tractor did not

move thereafter, there is no escape from the fact that the person who had been last in control of the instrumentality was plaintiff himself. The rule applies to the control and operation, not the ownership of the instrumentality. It is obvious that the res ipsa loquitur doctrine could not be applied against any defendant.

The judgment of the trial court is affirmed, with costs.

MERRILL and BADT, JJ., concur.